UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES,

    -against-

JOSEPH MONTELEONE, SR.,

    *Defendant*.

92-CR-351 (ARR)

**OPINION & ORDER**

ROSS, United States District Judge:

Defendant, Joseph Monteleone, Sr., has filed a *pro se* motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). This provision, as modified by the First Step Act of 2018, Pub. L. 115-391, 132 Stat. 5194 ("First Step Act"), permits a prisoner to move for compassionate release on his own behalf (after exhausting administrative remedies) and permits a sentencing court to grant a sentence reduction where "extraordinary and compelling reasons" warrant it after consideration of the applicable factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A). Mr. Monteleone principally argues that his sentence should be reduced due to his age, health issues and risk of further health issues from COVID-19, length of time served, and record of rehabilitation. He asks that I reduce his sentence to time served, or, in the alternative, to any number of years short of a life sentence. The government opposes, arguing that Mr. Monteleone has failed to present extraordinary or compelling reasons and that the § 3553(a) sentencing factors weigh against early release. For the following reasons, Mr. Monteleone's motion for compassionate release is granted.

## BACKGROUND

In 1991, the Colombo Organized Crime Family of La Cosa Nostra (the "Colombo Family") split into two warring factions—"one loyal to the incarcerated 'official' boss of the family,

Carmine Persico, Jr., and the other loyal to the appointed acting boss, Victor J. Orena." *United States v. Orena*, 145 F.3d 551, 553 (2d Cir. 1998). Mr. Monteleone aligned himself with the Persico faction—he was a member of the "crew" led by Colombo Family captains Joseph Russo and Anthony Russo. *Id.* at 553–54. The opposing sides fought a bloody internal war that claimed several lives and nearly claimed many others. Monteleone was apparently directly involved in two specific Colombo Family war-related shootings. First, according to accomplice witness testimony, Monteleone participated in an unsuccessful murder attempt on a member of the Orena faction, Louis Malpeso. *Id.* at 554. Second, on March 25, 1992, Orena loyalists John Minerva and Michael Imbergamo were killed outside a cafe Minerva owned on Long Island. *Id.* Though it is unclear who fired the shots killing Minerva and Imbergamo, accomplice testimony implicated the Russos in the murders and "[e]yewitness testimony and telephone records placed Monteleone, in an agitated state, at a bar and a delicatessen less than two blocks away from Minerva's cafe shortly before Minerva's murder." *Id.* (citation omitted).

On May 13, 1993, Mr. Monteleone and ten co-defendants were charged, in a fifteen-count superseding indictment, with violating and conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c)–(d). *Id.* at 553. Monteleone was specifically charged with conspiracy to murder members of the Orena faction and the murders of Minerva and Imbergamo, as both predicate RICO offenses and separate substantive offenses. *Id.* Monteleone was tried alongside co-defendants Anthony and Joseph Russo. After a ten-week jury trial, Monteleone was found guilty on all counts.[1] *Id.* at 554.

---

[1] Joseph Russo was also found guilty on all counts; Anthony Russo was found guilty on all counts except conspiracy to make extortionate collections of credit, a charge faced only by the Russos. *Orena*, 145 F.3d at 553–54.

2

In 1997, Judge Charles P. Sifton granted Monteleone and the Russos a new trial after holding that the government violated its *Brady* obligations by failing to disclose material information the defendants could have used to impeach out-of-court statements made by co-conspirator Gregory Scarpa, Sr. *Orena*, 145 F.3d at 553. Judge Sifton found that the government failed to disclose that Scarpa was a government informant, that Scarpa falsely attributed to others several murders with which he was involved, and that the FBI was investigating "a potentially improper relationship that had developed between Scarpa and his FBI contact, Special Agent R. Lindley DeVecchio." *Id.* at 555–56. On appeal, the Second Circuit found that the withheld impeachment evidence did not meet the *Brady* standard of materiality and reversed the district court's grant of a new trial. *Id.* at 553. The Second Circuit later affirmed a separate district court decision denying a supplemental motion for a new trial based on the purported perjury of cooperating government witnesses. *United States v. Monteleone*, 257 F.3d 210, 218 (2d Cir. 2001).

On March 12, 1999, Judge Sifton, under the then-mandatory sentencing guidelines, sentenced Mr. Monteleone principally to multiple concurrent terms of life imprisonment plus an additional consecutive term of five years and multiple concurrent five-year periods of supervised release. Calendar Entry, ECF No. 1528. On January 3, 2023, Mr. Monteleone filed the present motion, Def.'s Mot. for Compassionate Release ("Def.'s Mot."), ECF No. 1913, and the case was reassigned to me. Mr. Monteleone has been incarcerated since his arrest on April 8, 1993. Presentence Investigation Report ("PSR") 1. He is currently imprisoned at FCI Allenwood Medium. Def.'s Mot. 1.

## LEGAL STANDARD

The First Step Act allows criminal defendants to move for "[m]odification of an imposed term of imprisonment" before a federal sentencing court. 18 U.S.C. § 3582(c). To qualify for such

Case 1:92-cr-00351-ARR  Document 1921  Filed 04/10/23  Page 4 of 13 PageID #: 5695

relief, defendants must show: (1) that they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [their] behalf," or that thirty days have lapsed "from the receipt of such a request by the warden of [their] facility, whichever is earlier"; (2) that "extraordinary and compelling reasons warrant" a reduction in the term of imprisonment; (3) that these reasons outweigh "the factors set forth in section 3553(a) to the extent that they are applicable"; and (4) that a sentence reduction "is consistent with applicable policy statements issued by the Sentencing Commission." *Id*. § 3582(c)(1)(A).[2] The defendant bears the burden of proving he warrants a sentence reduction. *See United States v. Cato*, No. 16-CR-326 (ARR), 2020 WL 5709177, at *3 (E.D.N.Y. Sept. 24, 2020). Because Monteleone is proceeding *pro se*, his motion must be liberally construed. *See McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156–57 (2d Cir. 2017).

In determining what constitutes "extraordinary and compelling reasons," a district court has discretion to consider "the full slate" of arguments that defendants present to support a sentence reduction, "whether in isolation or combination." *United States v. Brooker*, 976 F.3d 228, 237–38 (2d Cir. 2020). "The only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" *Id.* (quoting 28 U.S.C. § 994(t)). Additionally, district courts may consider "intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to the First Step Act." *Concepcion v. United States*, 142 S. Ct. 2389, 2404 (2022).

---

[2] A sentence reduction is consistent with the Sentencing Commission's policy statements if "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The § 3142(g) factors are largely duplicative of those in § 3553(a), but they also include "whether the offense is a crime of violence" and "the weight of the evidence against the [defendant]." 18 U.S.C. § 3142(g)(1)–(4).

4

The Sentencing Commission's policy statement explicating "extraordinary and compelling reasons" under § 3582(c)(1)(A)(i) does not bind a district court, *see Brooker*, 976 F.3d at 236, but it does provide some guidance. Where a defendant seeks a sentencing modification due to medical conditions, the Sentencing Commission suggests that "extraordinary and compelling reasons" may exist in two scenarios. First, where "[a] defendant is suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S. Sent'g Guidelines Manual § 1B1.13 cmt. 1(A)(i) (U.S. Sent'g Comm'n 2021) ("U.S.S.G."). Second, where "[a] defendant is . . . suffering from a serious physical or medical condition, . . . suffering from a serious functional or cognitive impairment, or . . . experiencing deteriorating physical or mental health because of the aging process" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which [the defendant] is not expected to recover." *Id.* cmt. 1(A)(ii).

Even if extraordinary and compelling reasons exist, they must outweigh the § 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). These factors include: the nature and circumstances of the offense; the defendant's history and characteristics; the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes, and to provide the defendant with needed medical care or other correctional treatment; and the need to avoid unwarranted disparities in sentences. 18 U.S.C. § 3553(a).

## DISCUSSION

On June 7, 2022, Mr. Monteleone petitioned the BOP for compassionate release. Def.'s Mot., Ex. A. On August 5, 2022, Monteleone's warden denied the request for compassionate

release. *Id.* The government acknowledges that Mr. Monteleone appears to have exhausted his administrative remedies under 18 U.S.C. § 3582(c)(1)(A), Gov't Resp. 4 n.1, ECF No. 1916, and I find that he has done so. The principal issue implicated by Mr. Monteleone's motion thus is whether he has demonstrated extraordinary and compelling reasons for early release that are not outweighed by the relevant statutory sentencing factors.

   I.   **Extraordinary and Compelling Reasons.**

Monteleone principally argues that his age, medical conditions, and susceptibility to COVID-19, combined with his lengthy sentence and his rehabilitation while in prison, all amount to extraordinary and compelling reasons warranting a sentence reduction. As explained in Monteleone's motion and supported by attached medical documents, Monteleone is 83 years old, is currently confined to a wheelchair, and uses a catheter to urinate. Def.'s Mot. 5, 11; *see also* Def's Mot., Ex. B ("Medical Records") 1. His age and immobility make it difficult to move around the prison. *Id.* at 11. Monteleone also has blood clots in his lungs, a life-threatening aortic aneurysm that would require major surgery to repair, and "a slew of other medical problems." *Id.* at 5. Given his medical conditions, Monteleone expresses concern about contracting COVID-19 and argues that the BOP is unable to adequately protect him from the virus. *Id.* In his reply, Monteleone adds that he has recently been "placed on convalescence because of his health condition." Def.'s Reply 1, ECF No. 1918. Next, Monteleone offers as an extraordinary or compelling reason the length of his sentence, explaining that he has been incarcerated for over 29 years, longer than the average sentences imposed for murder or murder conspiracy. Def.'s Mot. at 6. Finally, Monteleone explains that he "has been completely rehabilitated," as demonstrated by his education, work, and disciplinary records. *Id.* at 8.

The government disagrees that Monteleone has shown extraordinary and compelling reasons for a sentence reduction. Responding to the health-related claims, the government explains that Monteleone's risk of severe illness from COVID-19 is low, notwithstanding his health conditions, because Monteleone has received four doses of the COVID-19 vaccine and the BOP has taken steps to prevent the spread of COVID-19 in its facilities. Gov't Resp. 5. (At the time of the government's response, FCI Allenwood apparently reported no active COVID-19 cases. *Id.*)[3] The government also argues that Mr. Monteleone has failed to show that the BOP is unable to effectively manage his care or provide any treatment he needs. *Id.* The government counters Monteleone's argument about the length of his sentence by noting that prisoners may not use motions for compassionate release to collaterally attack the merits of their sentences and stating that Monteleone's participation in the Colombo war "exceeded even a typical murder in its scope and brutality." *Id.* at 6. Finally, the government rejects Monteleone's efforts towards rehabilitation and clean recent disciplinary record as being below the extraordinary and compelling threshold. *Id.*

The government dismisses Monteleone's concerns about COVID-19, and I agree that the pandemic no longer poses the same threat as it did prior to the availability of vaccines. However, the government fails to address whether Mr. Monteleone's age and health conditions support a finding of extraordinary and compelling reasons. Though Monteleone does not appear to have a terminal illness, he is clearly "experiencing deteriorating physical . . . health because of the aging process." U.S.S.G. § 1B1.13 cmt. 1(A)(ii). Mr. Monteleone is 83 years old (and will turn 84 at the end of May). *See* PSR 2. He requires a wheelchair to navigate the prison facility. And he has

---

[3] As of April 10, 2023, the BOP reports one active case among inmates at FCC Allenwood, the complex that includes FCI Allenwood Medium. *COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Apr. 10, 2023).

7

thoracic and abdominal aortic aneurysms that would require a high-risk surgery to repair. Health Records 1, 4. And while the government is correct that rehabilitation is not alone sufficient to support a finding of extraordinary and compelling reasons, I find that Monteleone's efforts at rehabilitation support such a finding. Despite serving a life sentence with little or no hope of release, Monteleone has compiled a strong record while incarcerated, suggesting a motivation to improve himself. He received his GED while incarcerated in 1994, has completed 45 additional education courses, has had a clear disciplinary record for nearly a decade, and has been rated as having a minimal risk of recidivism. Def.'s Mot., Ex. C, at 1–3. Two BOP employees support these claims. Ryan Schuck, a recreation specialist, reports that Mr. Monteleone is "one of the hardest and best workers that have been employed by the Recreation Department" despite being the oldest inmate at his facility. Def.'s Mot., Ex. D. ("Letters of Support") 1. Mr. Shuck also says that Mr. Monteleone is "one of the most respected (by both staff and inmates) men on the compound" and he gives his "highest recommendation" that Monteleone be given a "second chance." *Id.* at 1–2. And a senior officer specialist assigned to Monteleone's housing unit, K. Taylor, reports that Monteleone has a positive attitude and a clear disciplinary record since 2013, and "think[s] Mr. Monteleone has been rehabilitated." *Id.* at 3. Both officers explain that Mr. Monteleone has maintained close family ties while incarcerated, statements supported by the letters of support by his son, daughter, son-in-law, and sister.[4] *See id.* at 2–7.

    I find that the sum of Mr. Monteleone's age, health conditions, and rehabilitation efforts constitute "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i). *See Brooker*, 976 F.3d at 236–37; *United States v. Russo*, No. 92-CR-351, — F. Supp. 3d —, 2022

---

[4] In his reply, Mr. Monteleone states that if released he would reside with his daughter in Florida. Def.'s Reply 2.

WL 17247005, at *5 (E.D.N.Y. Nov. 28, 2022) (finding extraordinary and compelling reasons where prisoner had clean recent disciplinary record, over 40 educational courses, GED, steady work assignment, BOP rating of minimal risk of recidivism, and support from BOP staff members).

## II. Section 3553(a) Factors.

Having concluded that Monteleone demonstrates extraordinary and compelling reasons for a sentence reduction, I must consider whether the § 3553(a) factors counsel against release. Monteleone argues that his rehabilitation should be factored into the "history and characteristics" consideration, that his record and numerous letters of support show he will not reoffend if released, and that a shorter sentence would reflect the seriousness of the offense, promote respect for the law, and provide just punishment, because numerous defendants sentenced to life for murder have been granted compassionate release. Def.'s Mot. 9–12. Monteleone also argues that his life sentence creates unwarranted sentence disparities, most notably compared to his co-defendant, Anthony Russo, who was recently granted a sentence reduction, but also compared to other defendants involved in the Colombo Family war who received relatively short sentences. Def.'s Reply 1–2.

The government counters that the § 3553(a) factors, particularly factors one and two, weigh strongly against release. Though it does not recount Monteleone's conduct in detail, the government states that his participation in organized crime was "horrific and reflected a complete disregard for both the law and human life." Gov't Resp. 7. The government adds that Monteleone claims to be rehabilitated but "continues to minimize his conduct" and fails to demonstrate contrition. *Id.* Emphasizing the corrosive impact of organized crime on communities, the

9

government concludes that Monteleone's life sentence is an appropriate consequence of the crimes he committed. *Id.*

Having considered the relevant statutory factors, I conclude that compassionate release is warranted, for the following reasons.

First, Mr. Monteleone was convicted of serious and violent crimes. He was a soldier and participant in a bloody internal war between factions of the Colombo crime family. He was involved in the attempted murder of one individual and the successful murder of two others—though I note that the government does not specify Monteleone's role in either incident. *See* Gov't Resp. 2. It also appears that Monteleone did not have a leadership role in the Colombo Family. *See* PSR ¶ 87 (noting that "[a]lthough the Government states that this defendant directed the activities of some of the other associates in the murders, there is a lack of specificity as to which murders or attempted murders the defendant is alleged to have exercised a leadership role" and declining to recommend a guidelines enhancement for a leadership role). That said, the nature, circumstances, and seriousness of Mr. Monteleone's crimes weigh against compassionate release.

Second, though Mr. Monteleone does not specifically express contrition for his role in Colombo Family war in his motion, for the last 30 years he has committed himself to rehabilitative activities "despite having . . . no realistic hope of release." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at *8 (S.D.N.Y. Apr. 6, 2020). As discussed above, I find these rehabilitative efforts impressive, and "evidence of postsentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant.'" *Pepper v. United States*, 562 U.S. 476, 491 (2011). I find the history and characteristics factor to be neutral or weighing slightly in favor of compassionate release.

10

Third, a 30-year sentence is not insignificant. Though murder and murder in furtherance of a RICO conspiracy are not identical offenses, it is worth noting that the national average for a murder conviction is closer to 20 years. *See United States v. Qadar*, No. 00-CR-603 (ARR), 2021 WL 3087956, at *12 (E.D.N.Y. July 22, 2021) (average federal murder sentence in fiscal year 2020 was approximately 21 years). As Judge Block recently explained in his opinion granting compassionate release to Anthony Russo, the government offered plea deals to many Colombo Family war participants that "align with the national average for murder convictions." *Russo*, 2022 WL 17247005, at *8; *see also id.* ("If the government in offering its plea deals did not believe that all those indicted on murder charges should be sentenced to life, why should the court?"). Moreover, given Mr. Monteleone's advanced age and health condition, further incarceration is surely not needed to protect the public from further crimes—indeed, the government does not argue as much. I find that the three decades Mr. Monteleone has served in prison are sufficient, but not greater than necessary, to promote respect for the law, provide just punishment, deter further criminal conduct, and protect the public from further crime. 18 U.S.C. § 3553(a)(1), (a)(2)(A). I note, too, that several other district courts in this circuit have granted compassionate release to prisoners serving life sentences notwithstanding convictions for heinous crimes. *See, e.g.*, *United States v. Fisher*, 493 F. Supp. 3d 231, 236, 239 (S.D.N.Y. 2020) (granting release after 38 years of defendant who likely murdered multiple victims during course of significant drug trafficking conspiracy); *United States v. Rodriguez*, 492 F. Supp. 3d 306, 308 (S.D.N.Y. 2020) (reducing sentence to 30 years for defendant who participated in torture and murder of confidential informant).

Finally, as mentioned earlier, one of Mr. Monteleone's co-defendants was recently granted a sentence reduction. *See Russo*, 2022 WL 17247005, at *9 (reducing Anthony Russo's sentence

11

to 35 years plus a lifetime of supervised release). Though § 3553(a)(6) "was intended to eliminate national disparity," it "does not on its face restrict the kinds of disparity a court may consider." *United States v. Wills*, 476 F.3d 103, 109 (2d Cir. 2007) (citation omitted), *abrogated on other grounds*, *Kimbrough v. United States*, 552 U.S. 85 (2007). Thus, while § 3553(a) does not require consideration of co-defendant sentences, it does not preclude such consideration in sentencing. *Wills*, 476 F.3d at 109. I find that Anthony Russo's sentence reduction creates an unwarranted sentence disparity between Monteleone and Russo, for three principal reasons. First, the men were convicted on the same charges. Second, unlike Monteleone, Anthony Russo was a leader in the Colombo Family and apparently gave specific orders regarding the murders of Imergamo and Minerva. PSR ¶ 85. Third, Russo, at 70 years old, is significantly younger than Monteleone. *Russo*, 2022 WL 174247005, at *6 n.7. This factor weighs strongly in Monteleone's favor.[5] *See Fisher*, 493 F. Supp. 3d at 237 (recognizing danger of sentencing disparity where co-defendant was granted compassionate release by different judge).

## CONCLUSION

For the foregoing reasons, I find that extraordinary and compelling reasons warrant a reduction to a term of 30 years' imprisonment, to be followed by a lifetime of supervised release. I also find that such a sentence is appropriate in light of the § 3553(a) factors. Accordingly, Mr. Monteleone's motion is GRANTED. Because Mr. Monteleone has, as of April 8, 2023, been incarcerated for 30 years, I hereby resentence him to time served and impose a special term of a lifetime of supervised release under 18 U.S.C. § 3582(c)(1)(A). *See Brooker*, 976 F.3d at 237. Mr. Monteleone's request for appointment of counsel is denied as moot.

---

[5] The Bureau of Prisons' "Inmate Locator" suggests that the third co-defendant, Joseph Russo, is deceased. *Find an inmate.*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Apr. 10, 2023).

This order is STAYED for up to seven days for the verification of Mr. Monteleone's residence and/or establishment of a release plan, to make appropriate travel arrangements, and to ensure his safe release. Mr. Monteleone shall be released as soon as a residence is verified, a release plan is established, and appropriate travel arrangements are made. There shall be no delay in carrying out this order. If more than seven days are needed to make the appropriate arrangements, the parties shall immediately notify the court and show cause why the stay should be extended.

SO ORDERED.

                                                                         /s/
                                                     Allyne R. Ross
                                                     United States District Judge

Dated:        April 10, 2023
               Brooklyn, New York